# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHELSEA D. RILEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-985-G |
| | ) |
| NANCY A. BERRYHILL, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Chelsea D. Riley brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Upon review of the administrative record (Doc. No. 10, hereinafter "R. _"),[1] and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands the case for further proceedings.

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her SSI application on October 10, 2013, alleging disability beginning September 8, 1998. R. 15, 314-20. Following denial of her application initially and on reconsideration, several hearings were conducted before an administrative

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

law judge ("ALJ"). R. 42-88, 89-95, 96-131, 132, 141. The ALJ issued an unfavorable decision on July 27, 2016. R. 12-41.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since she had filed her application on October 10, 2013. R. 17. At step two, the ALJ determined that Plaintiff had the medically determinable impairments of: history of hydrocephalus with ventriculoperitoneal shunt placement with multiple revisions; asthma and various allergies; degenerative disc disease; multiple arthralgias, with complaint of hip and shoulder pain, status post right shoulder surgery in 2011; headaches; history of extraocular muscle surgery at the age of five, with residual absence of depth perception; pain disorder with psychological components; cognitive disorder; and expressive language disorder. R. 17-27. The ALJ found that these impairments were severe "singly and/or in combination." R. 17. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 27-29.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her medically determinable impairments. R. 29-33. The ALJ found:

> [Plaintiff] has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except that [Plaintiff] is further limited to frequent stooping, kneeling, crouching, crawling, balancing, and climbing of ramps, stairs, ladders, ropes and scaffolds, as well as limited to frequent use of the right upper extremity for reaching overhead. [Plaintiff] also should not perform tasks requiring depth perception. In addition, [Plaintiff] should avoid more than occasional exposure to extreme heat, cold, vibration, as well as occasional exposure to pulmonary

2

irritants. [Plaintiff] also should avoid more than occasional exposure to workplace hazards, such as unprotected heights and dangerous moving machinery. [Plaintiff] also is limited to performing simple and routine task[s] consistent with unskilled work, with learning of task[s] provided through verbal instruction and demonstration.

R. 29. At step four, the ALJ found that Plaintiff had no past relevant work. R. 33.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of her age, education, work experience, and RFC—could perform. R. 34-35. Relying upon testimony provided by a vocational expert ("VE") at the third hearing regarding the degree of erosion to the unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform unskilled light occupations such as basket filler, laundry bagger, and night cleaner, and that such occupations offer jobs that exist in significant numbers in the national economy. R. 34-35.

The ALJ therefore concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant period. R. 35. Plaintiff's request for review by the SSA Appeals Council was denied, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. *See* R. 1-5; 20 C.F.R. § 416.1481.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th

Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

Plaintiff raises several challenges to the denial of benefits, including the ALJ's failure to conduct a proper analysis and provide substantial evidence for her step-three finding. *See* Pl.'s Br. (Doc. No. 15) at 6-7, 12-13; Pl.'s Reply (Doc. No. 20) at 7-8. Because the Court concludes that remand is required by the ALJ's errors at step three, this decision does not address the additional challenges, as they "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

A. *The ALJ's Step-Three Determination*

At step three, the determination is made whether an impairment or combination of impairments is "equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity." *Lax v. Astrue*, 489 F.3d 1080, 1085 (10th Cir. 2007) (alteration and internal quotation marks omitted). "If the

impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits." *Id.* (internal quotation marks omitted).

As noted above, the ALJ at step three determined that Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the Listings. R. 27-29; *see* 20 C.F.R. pt. 404, subpart P app. 1. Relevant here, the ALJ stated that she considered Listing 12.05 but found that the "'paragraph C' criteria" of that Listing "are not met because [Plaintiff] does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." R. 29; *see* 20 C.F.R. pt. 404, subpart P app. 1, § 12.05(C) (2016).[2]

B. Discussion

Plaintiff challenges the ALJ's determination that Plaintiff does not meet the criteria of Listing 12.05C for intellectual disability. *See* Pl.'s Br. at 6-7, 12-13; Pl.'s Reply at 7-8. "Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D)." 20 C.F.R. pt. 404, subpart P app. 1, § 12.00(A). Under the Listing, if a claimant's impairment satisfies the diagnostic description (the "capsule definition") and any one of the four sets of severity criteria, the claimant is presumptively disabled. *See id.*; *Lax*, 489 F.3d at 1085. Thus, to establish disability under Listing 12.05C, a claimant must show that he or she (a)

---

[2] Although Listing 12.05 has since been significantly revised, the Court uses the version that was in effect at the time of the ALJ's decision. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 n.5 (10th Cir. 2012).

5

meets Listing 12.05's capsule definition of "[i]ntellectual disability," i.e., that he or she has "significantly subaverage general intellectual functioning with deficits in adaptive functioning" that began "before age 22"; (b) has been assigned a "valid verbal, performance, or full scale IQ of 60 through 70"; and (c) has "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. pt. 404, subpt. P app. 1, §§ 12.05, 12.05(C); *see Barnes v. Barnhart*, 116 F. App'x 934, 939 (10th Cir. 2004).

    1. Specific Criteria

        (a) Capsule Definition

Plaintiff correctly notes that the ALJ entirely failed to discuss the first Listing 12.05C criterion: the capsule definition. *See* Pl.'s Reply at 7. Defendant acknowledges that to be the case but argues that the omission is immaterial because Plaintiff could not meet the capsule definition in any event, as Plaintiff "was not diagnosed with intellectual disability" and did not have "significantly subaverage general intellectual functioning with deficits in adaptive functioning" that began "before age 22." Def.'s Br. at 14; 20 C.F.R. pt. 404, subpart P app. 1, § 12.05.

The Listing does not require a definitive diagnosis of intellectual disability, however. *See* 20 C.F.R. pt. 404, subpart P app. 1, § 12.05(C); *cf.* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66150 (Sept. 26, 2016) ("[O]ur mental disorders listings are function-driven, not diagnosis-driven."). And regarding the requirement of "significantly subaverage general intellectual functioning with deficits in adaptive functioning" beginning "before age 22," the Tenth Circuit has rejected the

6

proposition that an ALJ's decision should be upheld, despite a failure to properly discuss this issue, based on a reviewing court's own finding of a lack of evidence that the claimant meets the capsule definition. *See Peck v. Barnhart*, 214 F. App'x 730, 736 (10th Cir. 2006) ("The Commissioner's argument ignores our ruling in *Clifton* where we held that we can only review ALJ decisions that make specific findings on the facts of the case. If [the claimant] does not meet the capsule definition, then the ALJ must make that determination in the first instance." (citing *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996)); *DeJarnett v. Colvin*, No. CIV-15-721-CG, 2016 WL 4998524, at *4 (W.D. Okla. Sept. 19, 2016) (citing *Peck*).

In short, the ALJ's decision does not adequately address whether Plaintiff met the capsule definition and the Court may not independently supply the missing analysis. "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (internal quotation marks omitted); *see Clifton*, 79 F.3d at 1009 (holding that ALJ's "bare conclusion [was] beyond meaningful judicial review" and that ALJ was required to "explain why he found that [the claimant] was not disabled at step three").

(b) Qualifying IQ Score

Plaintiff argues that the ALJ failed to properly evaluate a verbal-testing score received by Plaintiff in December 2015, specifically a Psychological Report issued by R. Keith Green, PhD. *See* Pl.'s Br. at 13; R. 710-19 (Exhibit 16F). In this Psychological Report, Dr. Green states that he administered the Wechsler Adult Intelligence Scale-IV

7

("WAIS-IV") test to Plaintiff and that Plaintiff obtained a Verbal Comprehension score of 70, which ranks at the 2nd percentile—i.e., Plaintiff performed better than two percent or less of other test-takers. R. 712. Dr. Green also noted that Plaintiff "demonstrated significantly better developed nonverbal reasoning abilities than verbal reasoning abilities" and displayed "[r]elative weaknesses" in "word fluency and word knowledge, as well as general fund of knowledge and abstract reasoning." R. 712. Defendant does not dispute that Plaintiff's WAIS-IV Verbal Comprehension score constituted a verbal IQ score that qualifies for the second criterion of Listing 12.05C. *See* Def.'s Br. (Doc. No. 17) at 14 n.2; *see also DeJarnett*, 2016 WL 4998524, at *3.

(c) Other Impairment

Defendant also does not dispute that Plaintiff met the third criterion of Listing 12.05C because Plaintiff had "another severe impairment." Def.'s Br. at 14 n.2; *see Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).

2. Harmless Error

The ALJ's failure to properly evaluate Plaintiff's alleged intellectual disability at step three cannot be excused as harmless, as Defendant argues, because Defendant has pointed to "no 'confirmed or unchallenged findings made elsewhere in the ALJ's decision' that '*conclusively* negate the possibility' that [Plaintiff] can meet Listing 12.05C." *DeJarnett*, 2016 WL 4998524, at *4 (emphasis added) (quoting *Murdock v. Astrue*, 458 F. App'x 702, 704 (10th Cir. 2012)). Although the ALJ noted Plaintiff's "low average" full-scale IQ score, the ALJ also found that Plaintiff suffers from both "cognitive disorder" and "expressive language disorder." R. 17, 25-26, 712. "Moreover, the record contains

evidence that [Plaintiff] suffers at least *some* amount of deficit in areas of adaptive functioning." *DeJarnett*, 2016 WL 4998524, at *4; *see, e.g.*, R. 347, 349 (Plaintiff, who was 16 years old when she filed her SSI application, reporting that she has problems completing tasks, concentrating, and understanding and following spoken instructions), 402 (transcript showing that Plaintiff received failing grades in the ninth grade), 711 (Dr. Green finding that Plaintiff had an "[i]mpaired capacity for retaining new learning").

The Court could not find that Plaintiff fails to meet the Listing 12.05C criteria, and specifically the capsule definition, without engaging in impermissible speculation and factfinding. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (noting that where an ALJ "did not provide" the Commissioner's proffered explanations, the court "may not create or adopt" such "post-hoc rationalizations to support the ALJ's decision").

3. Summary

The medical evidence undisputedly shows that Plaintiff met the IQ-score and the other-severe-impairment criteria of Listing 12.05C. And the ALJ's failure to address the capsule definition leaves the Court unable to review whether that criterion was met. For these reasons, remand is required. *See Peck*, 214 F. App'x at 735-37; *Murdock*, 458 F. App'x at 703-05; *DeJarnett*, 2016 WL 4998524, at *4.

CONCLUSION

The decision of the Commissioner is reversed and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). A separate judgment shall be entered.

IT IS SO ORDERED this 21st day of March, 2019.

CHARLES B. GOODWIN
United States District Judge